`1IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| ELIZABETH MAJERONI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| CHATHAM COUNTY BOARD OF | ) | **JURY TRIAL DEMANDED** |
| ELECTIONS, THOMAS J. MAHONEY III, | ) | |
| individually and in his official capacity, | ) | |
| ANDREW NIZWANTOWSKI, individually, | ) | |
| and ROBERT SANTORO, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Elizabeth Majeroni ("Majeroni"), by and through her undersigned counsel, states her Complaint against Defendants Chatham County Board of Elections, Thomas J. Mahoney III, Andrew Nizwantowski, and Robert Santoro, as follows:

## INTRODUCTION

1.    Majeroni cares deeply about her community and the rights of the public to participate in their democracy. After serving as a poll watcher for the May 2022 primary and witnessing several issues at the polling place, she followed up with open records act requests to the Chatham County Board of Elections ("BOE"). When those requests were not fully answered, she got a Chatham County grand jury to investigate the BOE. And that investigation resulted in the Chatham County grand jury advising the BOE to do better.

2.    The BOE instead retaliated against Majeroni. In July of 2023, the BOE held its first meeting that included a "formal" public comment period on the agenda. The BOE used this as an

opportunity to retaliate against Majeroni by, *inter alia*, preventing her from speaking, having her arrested, and having her physically hauled out of the meeting.

3.      The BOE and the officers who accosted Majeroni that day had no basis for their misconduct other than to deny Majeroni her Constitutional rights and otherwise harm her. For this, they are liable.

### PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff Majeroni is an individual residing in Chatham County, Georgia.

5.      Defendant Chatham County Board of Elections is a county governmental entity that may be served with summons and process at 1117 Eisenhower Drive, Suite F, Savannah, Georgia 31406

6.      Defendant Thomas J. Mahoney III ("Mahoney") resides in this District. He is sued in his individual capacity and official capacities.  Mahoney may be served with summons and process at his residence in Chatham County, Georgia or wherever he may be found.

7.      Defendant Andrew Nizwantowski ("Nizwantowski") resides in this District. He is sued in his individual capacity.  Nizwantowski may be served with summons and process his residence in Chatham County, Georgia or wherever he may be found.

8.      Defendant Robert Santoro ("Santoro") resides in this District. He is sued in his individual capacity.  Santoro may be served with summons and process at his residence in Chatham County, Georgia or wherever he may be found.

9.      This matter arises under the laws and Constitution of the United States, namely 42 U.S.C. § 1983 for the deprivations of Majeroni's rights under the United States Constitution, and thus this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

10. The Court has supplemental jurisdiction over Majeroni's state law claims pursuant to 28 U.S.C. § 1367(a) because her claims for battery, false imprisonment, and intentional infliction of emotional distress are so factually related to claims under 42 U.S.C. § 1983 such that it forms part of the same case or controversy under Article III of the United States Constitution.

11. Defendant Mahoney is a resident in this District, a substantial part of the events giving rise to Majeroni's claims occurred in this District, and all Defendants perform their governmental functions in this District.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) and 1391(c)(1)-(2).

## FACTUAL BACKGROUND

13. Majeroni is politically active and has a keen sense of her civic duties.

14. In 2022, Majeroni served as the Republican precinct chairwoman for her voting precinct. And she served as a volunteer poll watcher for the primary election in May of 2022 ("Election").

15. Majeroni witnessed several issues at the polling place during the Election, which sparked concerns, *inter alia*, about how Chatham County processed the ballots.

16. In pursuit of those concerns, Majeroni sent open records requests to Defendant BOE, to which it did not fully respond, and the responses she did receive raised concerns.

17. Eventually, Majeroni filed a complaint against Defendant BOE and Billy Wooten ("Wooten")—who is the BOE's Supervisor of Elections—with the Grand Jury of Chatham County ("Grand Jury") so that it could use its investigatory powers ("Grand Jury Complaint") to determine if a crime had been committed.

18.    The Grand Jury voted to create an investigating committee to investigate Majeroni's complaint.

19.    Ultimately, in March of 2023, the Grand Jury recommended that the BOE provide additional documents to Majeroni, that Defendant BOE allocate additional resources towards responding to open records requests, that Defendant BOE improve training on chain of custody paperwork, and that the Grand Jury continue its investigation during its next term in order to understand potential issues with QR codes on the election ballot.

20.    The QR code issue was left open because Wooten did not provide the Grand Jury investigating committee with information it requested from him and Defendant BOE regarding said codes. The Grand Jury's report stated that it should be provided with the information in the beginning of its next term so that it could complete its investigation.

21.    The Defendant BOE and Wooten did not follow the Grand Jury's recommendations. Importantly, they never provided the additional documents to Majeroni.

22.    In July of 2023, Defendant BOE held a regularly scheduled meeting that, unlike meetings in recent memory, included a "formal" public comment period on the agenda. (the "Meeting").

23.    By that time, Defendant Mahoney—the Chairman of Defendant BOE—knew that Majeroni had filed the Grand Jury Complaint, that she had repeatedly attempted to get information about Defendant BOE's conduct through the use of the Open Records Act, and that the Grand Jury recommended, *inter alia*, that additional documents be provided to Majeroni and that the investigation continue.

24.     Before the Meeting, on June 28, 2023, Wooten sent the following email to Chatham County Police Department ("CCPD") Chief Jeffrey M. Hadley Chatham County Manager Michael Kaigler:

> We have been sent a copy of a flyer that encourages people to attend and speak against the voting system and other processes. We allow public comment but speakers have to sign up and can only speak for up to three (3) minutes. I have a concern that this meeting could turn into shouting and arguing. I think we will need a uniformed officer to ensure that the meeting remains calm and the elected members of the board and other elected officials who attend are safe.

25.     Upon information and belief, Defendants BOE and Mahoney believed that Majeroni would speak at the Meeting.

26.     At the direction of Defendants Mahoney and the BOE, on July 10, 2023, before the Meeting, Wooten called the CCPD requesting that officers be present for the Meeting.

27.     Before the Meeting, Defendant BOE published a public comment guide for the Meeting, stating, *inter alia*:

> Public Comments provide an opportunity for the public to address the Elections Board on any subject which is not of a quasi-judicial ("court-like") nature. To provide formal comment at an Elections Meeting: (1) Speakers are requested to sign up on the public comment sign-up sheet, located on the entrance table, and may do so up to **thirty (30) minutes prior to the start of the meeting.** (2) The board chair will open the public comment section of the meeting once all other matters on the agenda have been discussed. (3) Speakers [sic] names will be called in numerical order by the board chair to give their public comment. (4) Speakers are asked to approach the podium, give their name, identify the subject matter on which they would like to speak. (5) Speakers will be allotted **three (3) minutes** to make their comments and should be attentive to the time allotted out of respect for others.

(Emphasis in original.)

28.     Majeroni refused be deterred from speaking at the Meeting and prepared accordingly.

29.     Majeroni drafted her remarks to ensure that she would be within the allotted three minutes.

30.     Then, on July 10, 2023, Majeroni arrived at the location of the Meeting and signed the public comment sign-up sheet.

31.     As planned by Defendants BOE and Mahoney, there were several officers stationed at the meeting—poised to interfere with the First Amendment rights of speakers such as Majeroni.

32.     When the meeting was opened up for public comment, Defendant Mahoney stated that he wanted to go through the speaker list orderly and respectfully.

33.     A large digital timer was running so all could be aware of when the three minute time allotment expired.

34.     Wooten was sitting right beside Defendant Mahoney during the Meeting.

35.     When it was Majeroni's turn to speak at the Meeting, she brought her prepared comments to the podium and began to read verbatim from them, including regarding publicly available grand jury information, stating as follows until Defendants forced her to stop:

> My name is Beth Majeroni and I am a registered voter of Chatham County. The message conveyed by all the speakers today is that the Dominion voting system is fraught with opportunities to corrupt the integrity of our elections in Georgia even under the best of circumstances. However, we have an added challenge in Chatham County. In Chatham County, I'm sure the Board is aware that Mr. Wooten was brought before a grand jury in February by me for allegations of voting irregularities and falsifying documents. Based on the testimony of Mr. Wooten and his staff, the grand jury recommended that the Board of Elections improve training on chain of custody paperwork. The paperwork reviewed by the grand jury had many blank lines and inconsistent signatures, quote unquote. The chain of custody paperwork was supposed to be provided to me immediately per the grand jury presentment to the judge on March 1st and I have yet to receive it. In addition, the grand jury noted that it received conflicting accounts from Mr. Wooten…

36.     Majeroni was calm and composed as she read the statement.

37.     Approximately 1:20 minutes into Majeroni's comments, Defendant Mahoney banged on his gavel and cut her off.

38.     Majeroni continued speaking, as was her First Amendment right.

39.     Defendants Nizwantowski and Santoro were observing and listening to the Meeting and knew that Majeroni had neither exceeded her time, violated any of the restrictions that were put in place for the Meeting, nor committed any crime.

40.     Defendant Mahoney then ordered Defendants Nizwantowski and Santoro to remove Majeroni from the Meeting, while he proclaimed that she was "out of order."

41.     In so doing, Defendant Mahoney was motivated by ill will, malice, and spite; and he intended to harm Majeroni, including by: consciously retaliating against her for having exercised her First Amendment rights, including through her open records act requests, her Grand Jury Complaint, and her comments at the Meeting; preventing her from exercising her Constitutional rights; unlawfully arresting her; unlawfully depriving her of her liberty; preventing her from holding the BOE accountable; dissuading her from continuing to pursue the Grand Jury Complaint; causing her physical pain; and causing her severe emotional distress.

42.     Defendant Nizwantowski descended upon Majeroni and told her: "They're asking you to leave."

43.     As was her right, while she stood next to the lectern, Majeroni explained that she would not leave and that she would finish her comments.

44.     Immediately thereafter, Defendant Santoro descended upon Majeroni, grabbed her wrists to restrain her, started dragging her out, and pushed her to the ground.

45.     As Majeroni sat on the ground in a skirt, Defendants Nizwantowski and Santoro picked her up by her shoulders and ankles, forcefully hauling her out of the Meeting, while causing her physical injury and severe emotional trauma.

46.     While she was being forcefully hauled out, Majeroni exclaimed, "You're hurting me! You're hurting me! Leave me alone. Leave me alone," as she struggled to keep her skirt down so she would not be further exposed before the large crowd. She was ignored.

47.     Horrified onlookers pleaded with the Defendants to cease from their attack upon Majeroni, to no avail.

48.     In so doing, Defendants Nizwantowski and Santoro were motivated by ill will, malice, and spite; and they intended to harm Majeroni, including by: consciously retaliating against her for having exercised her First Amendment rights, including through her comments at the Meeting; preventing her from exercising her Constitutional rights; unlawfully arresting her; unlawfully depriving her of her liberty; preventing her from holding the BOE accountable; causing her physical pain; and causing her severe emotional distress

49.     Majeroni did not authorize Defendants to haul her outside, and she, in fact, wanted to stay inside the building where the Meeting was being held.

50.     Majeroni was not acting violently, aggressively, or threateningly towards anyone.

51.     There was no probable cause to arrest Majeroni, including because there was no basis whatsoever to believe that Majeroni may have committed a crime.

52.     A reasonable officer could not believe that there was probable cause to arrest Majeroni.

53.     There was no warrant for Majeroni's arrest.

54.     Majeroni did not authorize Defendants to physically touch her, including by pushing her and hauling her out of the Meeting.

55.     Nor did Majeroni authorize Defendants to deprive her of her liberty.

56.     Defendant's conduct placed Majeroni in reasonable apprehension of a violent injury.

57.     Once outside, Majeroni wished to return to the Meeting.

58.     Defendants would not allow her to reenter the Meeting. Defendants Nizwantowski and Santoro pushed her away from the door and directed her to leave.

59.     A video recording showing multiple angles of the incident is included with this Complaint and may be found at:

https://www.dropbox.com/scl/fi/sdvhuyk07ifhhscqg4j6y/Majeroni-Video-Ex.-A.mp4?rlkey=4wfy1gikyd7w35il6m8n9kmz6&st=zlqf70df&dl=0.

60.     Several others participated in the public comment period after Majeroni's rights were violated.

61.     During the Meeting, others participated in the public comment period, but none were called out of order, let alone dragged out and/or arrested. During the August 2023 meeting, one of the participants in the public comment period repeatedly called Defendant BOE's members fascists, and he was not called out of order, hauled out, and/or arrested. During the September 2023 meeting, several speakers exceeded the three-minute time limit, one of whom continued speaking while the timer sounded loudly, with no repercussions.

62.     The distinguishing feature between Majeroni and the others who spoke at the Meeting and subsequent meetings without retaliation—some of whom violated the Meeting's

purported rules—is that Majeroni had pursued Grand Jury proceedings against Defendant BOE and Wooten.

63.     Defendant Mahoney has admitted that no other individual had ever been removed from a Defendant BOE meeting.

64.     Majeroni was not charged with any crime in connection with the Meeting, which stands to reason, as she acted lawfully at all times.

65.     At all relevant times, Defendants were acting under color of state law.

66.     Showing a conscious disregard for the First Amendment, after the Meeting, one of Defendant BOE's members published on Facebook that Majeroni "refused to remain quiet after the Chair asked her to do so multiple times" and that was why she was carried out.

67.     Demonstrating a consciousness of the unconstitutional nature of his conduct, after the Meeting, Defendant Mahoney fabricated a *post hoc* rationalization, stating that Majeroni was prevented from continuing to speak because she was disruptive and tried to take over the Meeting.

68.     Demonstrating a consciousness of the unconstitutional nature of the Defendants' conduct, after the Meeting, BOE member James Hall fabricated a *post hoc* rationalization by publishing a Facebook post implying that Majeroni's conduct had somehow deprived others of the "liberties and opportunity to offer comments before the public and our board."

## COUNT ONE
## FIRST AMENDMENT RETALIATION PURSUANT TO 42 U.S.C. § 1983
### (Against Defendant BOE and Defendant Mahoney
### in His Individual and Official Capacities)

69.     Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

70.     At the Meeting, Majeroni was engaged in conduct and speech protected by the First Amendment of the United States Constitution, which she directed to Defendant BOE and its board members, and which included speech that they considered offensive.

71.     More specifically, Majeroni was engaged in protected political speech concerning elections, legal proceedings, and the Open Records Act involving Defendant BOE and its members.

72.     Majeroni had also engaged in protected political speech through her prior open records requests to Defendant BOE and through her Grand Jury Complaint about Defendant BOE and Wooten.

73.     Acting under the color of state law, Defendant Mahoney—and through him, Defendant BOE—engaged in conscious retaliation against Majeroni for her speech, including by claiming she was out of order and by directing the CCPD to seize her and haul her out of the Meeting.

74.     Defendant Mahoney and BOE were aware that Majeroni had not violated the public comment guide.

75.     Defendant Mahoney, who himself is a lawyer, and Defendant BOE did this with the awareness that doing so was unlawful and would unduly harm Majeroni and discourage her from continuing to engage in protected conduct.

76.     Defendants BOE and Mahoney did this with a retaliatory motive based upon the substance and content of Majeroni's protected conduct and speech.

77.     Defendants BOE's and Mahoney's actions were motivated, in whole or in part, by Majeroni's protected conduct and commentary.

78.     There was no probable cause to arrest Majeroni.

79.     Majeroni's right to engage in political speech is a clearly established Constitutional right.

80.     Majeroni's right to be free from conduct motivated in whole or in part at preventing her continued political speech is a clearly established Constitutional right.

81.     Defendants BOE and Mahoney were plainly aware and on notice that Majeroni was engaged in Constitutionally protected conduct, and retaliating against her for doing so was a deprivation of her First Amendment rights.

82.     In short, it is clearly established and settled law that governmental entities and officials may not retaliate against private citizens because of the exercise of their First Amendment rights, and punishment and force in any manner for the exercise of such rights violates the First Amendment.

83.     As the Chairman of Defendant BOE, Defendant Mahoney has the authority to direct and establish the policy of Defendant BOE, a department of Chatham County, and based upon his conduct herein, that authority includes the right preside over the BOE's public meetings.

84.     Defendant Mahoney was acting within the course and scope of his position with as the Chairman of Defendant BOE, was acting under color of state law, and was acting to effectuate Defendant BOE's policies and procedures at the time of the retaliation against Majeroni.

85.     As the final policy decisionmaker for the Defendant BOE on these matters, Defendant Mahoney's actions—even if a single decision rather than repeated conduct—are properly considered and "surely represents" an act of official government policy. *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

86.     Having experienced the authority and power with which Defendants BOE and Mahoney can willingly haul her out of a public meeting, Majeroni is fearful of engaging in any further political speech in that venue.

87.     As the direct and proximate result of Defendants BOE and Mahoney's violation of Majeroni's Constitutional rights, Majeroni has suffered damages in an amount to be proven at trial, including physical harm, mental and emotional suffering, damages to her Constitutional rights and her reputation, loss of liberty, and out of pocket costs.

88.     Defendants BOE's and Mahoney's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

89.     Majeroni is further entitled to an award of her reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT TWO**
**<ins>FIRST AMENDMENT RETALIATION PURSUANT TO 42 U.S.C. § 1983</ins>**
**(Against Defendant Nizwantowski and Defendant Santoro in Their Individual Capacities)**

90.     Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

91.     At the Meeting, Majeroni was engaged in conduct and speech protected by the First Amendment of the United States Constitution.

92.     More specifically, Majeroni was engaged in protected political speech concerning elections, legal proceedings, and the Open Records Act involving Defendant BOE and its members.

93.     Acting under the color of state law, Defendant Nizwantowski and Defendant Santoro engaged in conscious retaliation against Majeroni for her speech, including by arresting her and detaining her.

94.     Defendant Nizwantowski and Defendant Santoro did this with the awareness that doing so was unlawful and would unduly harm Majeroni and discourage her from continuing to engage in protected conduct.

95.     Defendant Nizwantowski and Defendant Santoro did this with a retaliatory motive based upon the substance and content of Majeroni's protected conduct and speech, including her critiques of the Defendant BOE.

96.     Defendant Nizwantowski's and Defendant Santoro's actions were motivated, in whole or in part, by Majeroni's protected conduct and commentary.

97.     There was no probable cause to arrest her.

98.     Majeroni's right to engage in political speech is a clearly established Constitutional right.

99.     Majeroni's right to be free from conduct motivated in whole or in part at preventing her continued political speech is a clearly established Constitutional right.

100.     Defendant Nizwantowski and Defendant Santoro were plainly aware and on notice that Majeroni was engaged in Constitutionally protected conduct, and retaliating against her for doing so was a deprivation of her First Amendment rights.

101.     In short, it is clearly established and settled law that governmental entities and officials may not retaliate against private citizens because of the exercise of their First Amendment rights, and punishment and force in any manner for the exercise of such rights violates the First Amendment.

14

102.    Defendant Nizwantowski and Defendant Santoro were acting within the course and scope of their employment and under color of law at the time of the retaliation against Majeroni.

103.    Having experienced the authority and power with which Defendant Nizwantowski and Defendant Santoro can willingly haul her out of a public meeting, Majeroni is fearful of engaging in any further political speech in that venue.

104.    As the direct and proximate result of Defendant Nizwantowski's and Defendant Santoro's violation of Majeroni's Constitutional rights, Majeroni has suffered damages in an amount to be proven at trial, including physical harm, mental and emotional suffering, damages to her Constitutional rights and her reputation, loss of liberty, and out of pocket costs.

105.    Defendant Nizwantowski's and Defendant Santoro's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

106.    Majeroni is further entitled to an award of her reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT THREE**
**FALSE ARREST PURSUANT TO 42 U.S.C. 1983 AND**
**THE FOURTH AMENDMENT**
**(Against Defendant BOE and**
**Defendant Mahoney in His Individual and Official Capacities)**

107.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

108.    Defendants BOE and Mahoney directed and proximately caused Defendants Nizwantowski and Santoro to arrest Majeroni.

109.     Defendants BOE and Mahoney knew there existed no probable cause to arrest Majeroni, and thus Defendants BOE and Mahoney knowingly and willfully acted in the complete absence of probable cause and with malice in causing Majeroni to be arrested.

110.     As the direct and proximate result of Defendants BOE's and Mahoney's violation of Majeroni's Constitutional rights, Majeroni has suffered damages in an amount to be proven at trial, including physical harm, mental and emotional suffering, damages to her Constitutional rights and her reputation, loss of liberty, and out of pocket costs.

111.     At the time of the arrest, no reasonable police officer could have believed that there was probable cause or arguable probable cause to believe Majeroni committed any criminal offense.

112.     At the time of the arrest, any objectively reasonable law enforcement officer would have known that causing a citizen to be arrested under the circumstances to which Majeroni was subjected violated the Fourth Amendment of the United States Constitution.

113.     Majeroni's right to be free from unlawful seizure and arrest is clearly established under the Fourth Amendment of the United States Constitution.

114.     Defendants BOE's and Mahoney's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

115.     Majeroni is further entitled to an award of her reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT FOUR**
**FALSE ARREST PURSUANT TO 42 U.S.C. 1983 AND**
**THE FOURTH AMENDMENT**
**(Against Defendant Nizwantowski and Defendant Santoro in Their Individual Capacities)**

116.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

117.    Defendants Nizwantowski and Santoro arrested Majeroni.

118.    In arresting Majeroni, they falsely accused her of committing a crime.

119.    Defendants Nizwantowski and Santoro knew there existed no probable cause or even arguable probable cause to arrest Majeroni, and thus Defendants Nizwantowski and Santoro knowingly and willfully acted in the complete absence of probable cause and with malice in causing Majeroni to be arrested.

120.    As the direct and proximate result of Defendants Nizwantowski's and Santoro's violation of Majeroni's Constitutional rights, Majeroni has suffered damages in an amount to be proven at trial, including physical harm, mental and emotional suffering, damages to her Constitutional rights and her reputation, loss of liberty, and out of pocket costs.

121.    At the time of the arrest, no reasonable police officer could have believed that there was probable cause or arguable probable cause to believe Majeroni committed any criminal offense.

122.    At the time of the arrest, any objectively reasonable law enforcement officer would have known that causing a citizen to be arrested under the circumstances to which Majeroni was subjected violated the Fourth Amendment of the United States Constitution.

123.    Majeroni's right to be free from unlawful seizure and arrest is clearly established under the Fourth Amendment of the United States Constitution

124.    Defendants Nizwantowski's and Santoro's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

125.    Majeroni is further entitled to an award of her reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

**COUNT FIVE**
**FALSE IMPRISONMENT PURSUANT TO 42 U.S.C. 1983**
**AND THE FOURTEENTH AMENDMENT**
**(Against Defendant BOE and Defendant Mahoney**
**in His Individual and Official Capacities)**

126.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

127.    Defendants BOE and Mahoney directed and proximately caused Defendants Nizwantowski and Santoro to detain Majeroni and deprive her of her liberty, including by hauling her out of the Meeting and barring her from returning, despite Majeroni's intent to remain in the meeting.

128.    Defendants BOE and Mahoney knew there existed no probable cause to detain Majeroni, and thus Defendants BOE and Mahoney knowingly and willfully acted in the complete absence of probable cause and with malice in causing Majeroni to be detained and deprived of her liberty.

129.    Defendants BOE and Mahoney acted with a conscious disregard of and with a deliberate indifference to Majeroni's rights.

130.    As the direct and proximate result of Defendants BOE's and Mahoney's violation of Majeroni's Constitutional rights, Majeroni has suffered damages in an amount to be proven at

trial, including physical harm, mental and emotional suffering, damages to her Constitutional rights and her reputation, loss of liberty, and out of pocket costs.

131.     At the time of the detention, no reasonable police officer could have believed that there was probable cause or arguable probable cause to believe Majeroni committed any criminal offense.

132.     At the time of the detention, any objectively reasonable law enforcement officer would have known that causing a citizen to be detained and deprived of her liberty under the circumstances to which Majeroni was subjected violated the Fourteenth Amendment of the United States Constitution.

133.     Majeroni's right to be free from unlawful detention and the deprivation of her liberty is clearly established under the Fourteenth Amendment of the United States Constitution.

134.     Defendants BOE's and Mahoney's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

135.     Majeroni is further entitled to an award of her reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT SIX
### FALSE IMPRISONMENT PURSUANT TO 42 U.S.C. 1983
### AND THE FOURTEENTH AMENDMENT
**(Against Defendant Nizwantowski and Defendant Santoro in Their Individual Capacities)**

136.     Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

137.     Defendants Nizwantowski and Santoro detained Majeroni and deprived her of her liberty, including by hauling her out of the Meeting and barring her from returning, despite Majeroni's intent to remain in the meeting.

138.     Defendants Nizwantowski and Santoro knew there existed no probable cause to detain Majeroni, and thus Defendants Nizwantowski and Santoro knowingly and willfully acted in the complete absence of probable cause and with malice in causing Majeroni to be detained and deprived of her liberty.

139.     Defendants Nizwantowski and Santoro acted with a conscious disregard of and with a deliberate indifference to Majeroni's rights.

140.     As the direct and proximate result of Defendants Nizwantowski's and Santoro's violation of Majeroni's Constitutional rights, Majeroni has suffered damages in an amount to be proven at trial, including physical harm, mental and emotional suffering, damages to her Constitutional rights and her reputation, loss of liberty, and out of pocket costs.

141.     At the time of the detention, no reasonable police officer could have believed that there was probable cause or arguable probable cause to believe Majeroni committed any criminal offense.

142.     At the time of the detention, any objectively reasonable law enforcement officer would have known that causing a citizen to be detained and deprived of her liberty under the circumstances to which Majeroni was subjected violated the Fourteenth Amendment of the United States Constitution.

143.     Majeroni's right to be free from unlawful detention and the deprivation of her liberty is clearly established under the Fourteenth Amendment of the United States Constitution.

144.     Defendants Nizwantowski's and Santoro's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

145.    As a result of Majeroni's arrest, she suffered a loss of liberty, reputational damage, humiliation, and emotional distress.

146.    Majeroni is further entitled to an award of her reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT SEVEN
### BATTERY
**(Against Defendant Mahoney in His Individual Capacity)**

147.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

148.    Defendant Mahoney unlawfully and proximately caused Majeroni's body to be touched in a harmful and offensive manner.

149.    Majeroni did not authorize said touching.

150.    Defendant Mahoney proximately caused the resulting injuries to Majeroni in an amount to be proven at trial, including physical injuries and mental and emotional suffering.

151.    Defendant Mahoney acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful—conduct while in the exercise of her first amendment rights, such that he is not entitled to official immunity. Defendants acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

152.    Defendant Mahoney's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of his actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

153.    Defendant Mahoney acted in bad faith and has caused Majeroni unnecessary trouble and expense, thus entitling Majeroni to an award of her expenses of litigation, including her attorneys' fees, pursuant to O.C.G.A. §13-6-11.

**COUNT SEVEN**
**BATTERY**
**(Against Defendant Nizwantowski and Defendant Santoro in Their Individual Capacities)**

154.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

155.    Defendant Nizwantowski and Defendant Santoro unlawfully and proximately touched Majeroni's body in a harmful and offensive manner.

156.    Majeroni did not authorize said touching.

157.    Defendant Nizwantowski and Defendant Santoro proximately caused the resulting injuries to Majeroni in an amount to be proven at trial, including physical injuries and mental and emotional suffering.

158.    Defendant Nizwantowski and Defendant Santoro acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful—conduct while in the exercise of her first amendment rights, such that they are not entitled to official immunity. Defendants acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

159.    Defendant Nizwantowski's and Defendant Santoro's conduct was motivated by that kind of ill will, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

160.    Defendant Nizwantowski and Defendant Santoro acted in bad faith and have caused Majeroni unnecessary trouble and expense, thus entitling Majeroni to an award of her expenses of litigation, including her attorneys' fees, pursuant to O.C.G.A. §13-6-11.

**COUNT EIGHT**
**FALSE IMPRISONMENT**
**(Against Defendant Mahoney in His Individual Capacity)**

161.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

162.    Defendant Mahoney unlawfully and proximately caused Majeroni to be unlawfully detained and deprived of her liberty.

163.    Defendant Mahoney caused Majeroni to be falsely imprisoned pursuant to O.C.G.A. § 51-7-20.

164.    Majeroni did not authorize this detention and deprivation of her liberty.

165.    Defendant Mahoney proximately caused the resulting injuries to Majeroni in an amount to be proven at trial, including mental and emotional suffering.

166.    Defendant Mahoney acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful—conduct while in the exercise of her first amendment rights, such that he is not entitled to official immunity. Defendants acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

167.    Defendant Mahoney's conduct was motivated by that kind of ill will, spite, malice, and conscious indifference and reckless disregard for the consequences of his actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

168.    Defendant Mahoney acted in bad faith and has caused Majeroni unnecessary trouble and expense, thus entitling Majeroni to an award of her expenses of litigation, including her attorneys' fees, pursuant to O.C.G.A. §13-6-11.

**COUNT NINE**
**FALSE IMPRISONMENT**
**(Against Defendant Nizwantowski and Defendant Santoro in Their Individual Capacities)**

169.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

170.    Defendant Nizwantowski and Defendant Santoro unlawfully detained and Majeroni and deprived of her liberty.

171.    Defendant Nizwantowski and Defendant Santoro falsely imprisoned Majeroni pursuant to O.C.G.A. § 51-7-20.

172.    Majeroni did not authorize this detention and deprivation of her liberty.

173.    Defendant Nizwantowski and Defendant Santoro proximately caused the resulting injuries to Majeroni in an amount to be proven at trial, including physical injuries, and mental and emotional suffering.

174.    Defendant Nizwantowski and Defendant Santoro acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful— conduct while in the exercise of her first amendment rights, such that they are not entitled to official immunity. Defendants acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

175.    Defendant Nizwantowski's and Defendant Santoro's conduct was motivated by that kind of ill will, spite, malice, and conscious indifference and reckless disregard for the

consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

176.     Defendant Nizwantowski and Defendant Santoro acted in bad faith and have caused Majeroni unnecessary trouble and expense, thus entitling Majeroni to an award of her expenses of litigation, including her attorneys' fees, pursuant to O.C.G.A. §13-6-11.

**COUNT TEN**
**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**
**(Against Defendant Mahoney in His Individual Capacity)**

177.     Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

178.     Defendant Mahoney engaged in reckless and intentional conduct in causing Plaintiff to be arrested for no lawful reason whatsoever.

179.     Such conduct was extreme and outrageous.

180.     Such conduct proximately caused Majeroni severe emotional distress.

181.     Defendant Mahoney's conduct was motivated by that kind of ill will, spite, malice, and conscious indifference and reckless disregard for the consequences of his actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

182.     Defendant Mahoney acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful—conduct while in the exercise of her first amendment rights, such that he is not entitled to official immunity. Defendants acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

183.    Defendant Mahoney acted in bad faith and has caused Majeroni unnecessary trouble and expense, thus entitling Majeroni to an award of her expenses of litigation, including her attorneys' fees, pursuant to O.C.G.A. §13-6-11.

**COUNT ELEVEN**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendant Nizwantowski and Defendant Santoro in Their Individual Capacities)**

184.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

185.    Defendant Nizwantowski and Defendant Santoro engaged in reckless and intentional conduct in arresting Majeroni for no lawful reason whatsoever.

186.    Such conduct was extreme and outrageous.

187.    Such conduct proximately caused Majeroni severe emotional distress.

188.    Defendant Nizwantowski's and Defendant Santoro's conduct was motivated by that kind of ill will, spite, malice, and conscious indifference and reckless disregard for the consequences of their actions and for Majeroni's rights that justifies an award to Majeroni of punitive damages.

189.    Defendant Nizwantowski and Defendant Santoro acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful—conduct while in the exercise of her first amendment rights, such that they are not entitled to official immunity. Defendants acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

190.    Defendant Nizwantowski and Defendant Santoro acted in bad faith and have caused Majeroni unnecessary trouble and expense, thus entitling Majeroni to an award of her expenses of litigation, including her attorneys' fees, pursuant to O.C.G.A. §13-6-11.

**COUNT TWELVE**
**NEGLIGENCE**
**(Against Defendant Mahoney in His Individual Capacity)**

191.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

192.    At all times relevant, Defendant Mahoney owed a duty to Majeroni to act with the ordinary care of reasonable persons in similar circumstances.

193.    Defendant Mahoney owed a duty to Majeroni to avoid subjecting Majeroni to arrest, detention, and imprisonment without probable cause.

194.    Defendant Mahoney breached the duty owed to Majeroni by failing to act with the ordinary care of a reasonable person and failing to conduct due diligence and/or reasonable investigation into the validity or lawfulness of the information used to arrest and detain Majeroni.

195.    Defendant Mahoney's acts and omissions, as alleged, caused Majeroni to suffer damages.

196.    Defendant Mahoney acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful—conduct while in the exercise of her first amendment rights, such that they are not entitled to official immunity. Defendant Mahoney acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

## COUNT THIRTEEN
## <u>NEGLIGENCE</u>
### (Against Defendant Nizwantowski and Defendant Santoro
### in Their Individual Capacities)

197.    Majeroni incorporates by reference paragraphs 1 through 68 of this Complaint as though set forth herein in their entirety.

198.    At all times relevant, Defendant Nizwantowski and Defendant Santoro owed a duty to Majeroni to act with the ordinary care of reasonable persons in similar circumstances.

199.    Defendant Nizwantowski and Defendant Santoro owed a duty to Majeroni to avoid subjecting Majeroni to arrest, detention, and imprisonment without probable cause.

200.    Defendant Nizwantowski and Defendant Santoro breached the duty owed to Majeroni by failing to act with the ordinary care of a reasonable person and failing to conduct due diligence and/or reasonable investigation into the validity or lawfulness of the information used to arrest and detain Majeroni.

201.    Defendant Nizwantowski's and Defendant Santoro's acts and omissions, as alleged, caused Majeroni to suffer damages.

202.    Defendant Nizwantowski and Defendant Santoro acted with actual malice, including with both the intent to cause Majeroni harm and injury and having done so with the unequivocal knowledge that Majeroni had not engaged in any unlawful—or even disrespectful—conduct while in the exercise of her first amendment rights, such that they are not entitled to official immunity. Defendant Nizwantowski and Defendant Santoro acted with the intention to retaliate and inflict harm, as opposed to having made a good faith mistake.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Elizabeth Majeroni respectfully petitions this Honorable Court for the following relief:

a) That Summons and Process issue as provided by law;

b) That Majeroni be granted a trial before a jury of her peers;

c) That Majeroni be granted judgment and all appropriate damages against all Defendants, including compensatory damages, punitive damages, and expenses of litigation, including costs and attorneys' fees; and

d) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 8th day of July, 2024.

/s/Rachel Berlin Benjamin
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@beal.law
Andrew M. Beal
Georgia Bar No. 043842
drew@beal.law
BEAL SUTHERLAND BERLIN & BROWN, LLC
2200 Century Parkway NE, Suite 100
Atlanta, GA 30345
678-449-0422

/s/Jonathan D. Grunberg
Jonathan D. Grunberg
Georgia Bar No. 869318
jgrunberg@wgwlawfirm.com
WADE, GRUNBERG & WILSON, LLC
729 Piedmont Ave, NE
Atlanta, Georgia 30308
404-600-1153

*Counsel for Plaintiff Elizabeth Majeroni*