# In the United States District Court for the Southern District of Georgia Savannah Division

ELIZABETH MAJERONI,

    Plaintiff,

    v.

CHATHAM COUNTY BOARD OF
ELECTIONS, THOMAS J. MAHONEY,
III, ANDREW NIZWANTOWSKI, and
ROBERT SANTORO,

    Defendants.

CASE NO. 4:24-CV-141

## ORDER

Before the Court is Defendants Andrew Nizwantowski and Robert Santoro's motion to dismiss. Dkt. No. 23. The motion has been fully briefed and is ripe for review. Dkt. Nos. 23, 29, 35, 37, 38. The Court heard oral argument on October 31, 2024. Dkt. No 36. For the reasons set forth below, the Court **DENIES** Defendants' motion.

## BACKGROUND

Plaintiff Elizabeth Majeroni was the Republican precinct chairwoman for her voting precinct and served as a poll watcher for the May 2022 primary election in Chatham County, Georgia. Dkt. No. 1 ¶ 14. Plaintiff brings this civil rights action against Defendants Nizwantowski and Santoro, Chatham County police officers, in their individual capacity, see dkt. no. 23-1 at 1:23–3:01, as well as the Chatham County Board of Elections ("BOE") and

Thomas Mahoney III, Chairman of the BOE, in both his individual
and official capacities. Dkt. No. 1 ¶¶ 6, 23.

    While serving as a volunteer poll watcher during the May 2022
primary, Plaintiff witnessed several issues at the polling place
pertaining to ballot processing. Id. ¶¶ 14–15. As a result of her
concerns, Plaintiff filed Open Records Act requests with the
Chatham County BOE for information about how the county processed
ballots. Id. ¶¶ 15–16. Because Plaintiff felt that her requests
were not fully answered, she filed a complaint against the BOE and
Billy Wooten, the BOE Supervisor of Elections, with the grand jury
in Chatham County in hopes that the grand jury would investigate
whether any crimes had been committed. Id. ¶¶ 16–17.

    In May 2023, the grand jury recommended the following: (1)
the BOE provide Plaintiff with additional documentation, (2) the
BOE should allocate more resources towards responding to the Open
Records Act request, (3) the BOE needs to improve training on
chain-of-custody paperwork, and (4) the BOE should allow the grand
jury to investigate to assess potential issues with the QR codes
used on ballots. Id. ¶ 19. Plaintiff claims that these
recommendations were not followed. Id. ¶ 21.

    In July 2023, the BOE held a regularly scheduled meeting.
Id. ¶ 22. Unlike most of the other BOE meetings, this meeting
included a "formal" public comment period. Id. Before the meeting,

2

the BOE issued guidelines for those who wished to make public comments. The guidelines provided:

> Public Comments provide an opportunity for the public to address the Elections Board on any subject which is not of a quasi-judicial ("court-like") nature. To provide formal comment at an Elections Meeting: (1) Speakers are requested to sign up on the public comment sign-up sheet, located on the entrance table, and may do so up to **thirty (30) minutes prior to the start of the meeting**. (2) The board chair will open the public comment section of the meeting once all other matters on the agenda have been discussed. (3) Speakers [sic] names will be called in numerical order by the board chair to give their public comment. (4) Speakers are asked to approach the podium, give their name, identify the subject matter on which they would like to speak. (5) Speakers will be allotted **three (3) minutes** to make their comments and should be attentive to the time allotted out of respect for others.

Id. ¶ 27 (emphasis in original).

Prior to the meeting, Billy Wooten emailed the Chatham County Police Chief, Jeffrey Hadley, and County Manager, Michael Kaigler, explaining that the meeting included a public comment period and stating, "I have a concern that this meeting could turn into shouting and arguing. I think we will need a uniformed officer to ensure that the meeting remains calm and the elected members of the board and other elected officials who attend are safe." Id. ¶ 24. The BOE and Defendant Mahoney anticipated that Plaintiff would speak at the meeting, and she did. Id. ¶ 25. Video footage of the meeting was attached to the Complaint. Dkt. No. 1 ¶ 59, see also dkt. no. 23-1.

On July 10, 2023, the day of the meeting, several officers were present. Id. ¶ 31. Plaintiff arrived at the meeting and signed up to speak. Id. ¶ 30. She brought along pre-drafted remarks to ensure she stayed within the three-minute time limit. Id. ¶ 29. When it was her turn to speak, Plaintiff began to read her remarks:

> My name is Beth Majeroni and I am a registered voter of Chatham County. The message conveyed by all the speakers today is that the Dominion voting system is fraught with opportunities to corrupt the integrity of our elections in Georgia even under the best of circumstances. However, we have an added challenge in Chatham County. In Chatham County, I'm sure the Board is aware that Mr. Wooten was brought before a grand jury in February by me for allegations of voting irregularities and falsifying documents. Based on the testimony of Mr. Wooten and his staff, the grand jury recommended that the Board of Elections improve training on chain of custody paperwork. The paperwork reviewed by the grand jury had many blank lines and inconsistent signatures, quote unquote. The chain of custody paperwork was supposed to be provided to me immediately per the grand jury presentment to the judge on March 1st and I have yet to receive it. In addition, the grand jury noted that it received conflicting accounts from Mr. Wooten . . .

Id. ¶ 35. Roughly one minute and twenty seconds into Plaintiff calmly reading her statement, Defendant Mahoney cut Plaintiff off by banging his gavel. Id. ¶¶ 36–37; see also dkt. no. 23-1 at 1:15. Still, Plaintiff continued speaking. Dkt. Nos. 1 ¶ 38, 23-1 at 1:15–1:18.

Defendant Mahoney then directed Defendants Nizwantowski and Santoro to remove Plaintiff from the meeting because she was "out of order." Dkt. Nos. 1 ¶¶ 39–40, 23-1 at 1:17. Defendant Nizwantowski approached Plaintiff and said, "They're asking you to

4

leave." Dkt. Nos. 1 ¶ 42, 23-1 at 1:23. Plaintiff responded by stating "They're not allowed to, it's against my right. . . ." Dkt. Nos. 23-1 at 1:27–1:32, 1 ¶ 4. At that point, Defendant Santoro approached Plaintiff and tried to usher her towards the exit. Dkt. No. 23-1 at 1:35–1:36. In response, Plaintiff allowed herself to go limp and fall to the ground. Id. at 1:35–1:40.[1] Defendants picked Plaintiff up by her shoulders and ankles and carried her out of the meeting. Id. at 1:45–1:56; see also dkt. no. 1 ¶ 45. While being carried outside, Plaintiff shouted "You're hurting me! You're hurting me! Leave me alone. Leave me alone." Dkt. No. 1 ¶ 46; see also dkt. no. 23-1 at 2:46–2:50. Plaintiff was wearing a skirt, and she struggled to keep it properly pulled down while the officers were carrying her. Dkt. No. 1 ¶ 46; see also dkt. no. 23-1 at 2:42–2:54. The video shows that Plaintiff is a petite woman who appears to weigh in the vicinity of 110 pounds. See generally dkt. no. 23-1. The other attendees at the meeting

---

[1] Plaintiff alleges in her Complaint that "Defendant Santoro descended upon [her], grabbed her wrists to restrain her, started dragging her out, and pushed her to the ground." Dkt. No. 1 ¶ 44. Although the Court must accept the facts in the complaint as true at the motion to dismiss stage, "where a video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account and view the facts in the light depicted by the video." Baker v. City of Madison, 67 F.4th 1268, 1278 (11th Cir. 2023) (citations omitted). Here, the video footage of the meeting portrays a different version of events than Plaintiff alleges, so the Court views the facts as depicted in the video. Id.

can be heard blurting out their reactions. Their exclamations include "Oh my God!" and "This is unbelievable." Dkt. No. 23-1 at 1:44–1:45, 1:54–1:55, 2:09–2:11, 2:15–2:16, 2:18–2:19. Plaintiff alleges that this removal caused her both physical injury and severe emotional trauma. Dkt. No. 1 ¶¶ 45–46.

Once outside, Defendants set Plaintiff down, placing her feet first onto the ground. Dkt. No. 23-1 at 2:53–2:54. Then, another individual told Plaintiff, "They want you to leave ma'am." Id. at 2:56–2:57. Plaintiff responded by saying that she needed her "stuff," and Defendant Nizwantowski stated that he would go inside to collect her belongings for her. Id. at 2:58–3:01.

Plaintiff was not the only individual who spoke during the comment period, but she asserts that she was the only one who was called out of order and "hauled out, and/or arrested." Dkt. No. 1 ¶ 61. Plaintiff alleges one speaker called the BOE members "fascists" and several others exceeded the three-minute time limit. Id.

Plaintiff brings against Defendants Nizwantowski, Santoro, Mahoney, and the BOE claims of violations of her First, Fourth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, as well as state law claims of battery, false imprisonment, intentional infliction of emotional distress, and negligence. Dkt. No. 1. Defendants Nizwantowski and Santoro now move to dismiss Plaintiff's claims. Dkt. No. 23.

**LEGAL AUTHORITY**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

7

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Lastly, "[u]nder the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) 'the plaintiff refers to certain documents in the complaint,' (2) those

documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." <u>Baker</u>, 67 F.4th at 1276 (citations omitted). This doctrine has applied to "various types of documentary evidence" including body camera footage. <u>Id.</u> The requirements are satisfied for the Court to consider the video footage attached to Defendants' motion to dismiss without converting the motion into one for summary judgment. Dkt. No. 23-1. In this case, (1) Plaintiff references the footage in her complaint and includes a link to it, (2) the footage depicts the incidents giving rise to Plaintiff's claims, and (3) neither party disputes the authenticity of the footage. <u>See</u> Dkt. Nos. 1 ¶ 59, 23, 23-1, 29, 35, 37, 38; <u>see also</u> <u>Baker</u>, 67 F.4th at 1276.

## DISCUSSION

Defendants Nizwantowski and Santoro move for dismissal on several grounds. <u>See generally</u> Dkt. No. 23. First, they argue that Plaintiff's federal law claims are barred by qualified immunity. <u>Id.</u> at 3-9. Second, they argue that Plaintiff's state law claims are barred by official immunity. <u>Id.</u> at 3, 9-18. Lastly, they argue that Plaintiff failed to sufficiently plead a claim for intentional infliction of emotional distress. <u>Id.</u> at 3, 18-21.

## I.  Federal Law Claims: Counts Two, Four, and Six

First, Defendants argue that Plaintiff's federal law claims are barred by qualified immunity. "Qualified immunity is a defense not only from liability, but also from suit, so courts should

ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). This defense shields "all but the plainly incompetent." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). To be protected, a government official must establish that he was acting within the scope of his discretionary authority. Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019). Discretionary authority includes "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Id. (quoting Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994)).

As long as a government official is acting within the scope of his discretionary authority, qualified immunity will shield him from liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Critically, for a right to be clearly established, there does not have to be case law "directly on point, but existing precedent must have placed the statutory or

10

constitutional question beyond debate." <u>al-Kidd</u>, 563 U.S. at 741. Courts have the discretion to decide which of these two prongs to analyze first. <u>Id.</u>

**A. Discretionary Authority**

Plaintiff argues that Defendants did not provide a factual basis to show how or why they were acting within the scope of their discretionary authority and therefore failed to adequately assert qualified immunity as an affirmative defense. Dkt. No. 29 at 5-6. However, there are sufficient facts alleged to support the conclusion that Defendants acted within their discretionary authority for Counts Two, Four, and Six.

Count Two alleges that Defendants retaliated against Plaintiff for her speech by arresting and detaining her. The Complaint states that "Defendant Nizwantowski and Defendant Santoro were acting within the course and scope of their employment and under color of law at the time of the retaliation against Majeroni." Dkt. No. 1 ¶ 102. Accepting as true that Defendants were acting within the course and scope of their employment at the relevant time, the allegations are sufficient to conclude that Defendants' conduct was undertaken as part of their employment duties and within the scope of their authority as officers. Discovery may show otherwise.

Count Four alleges Defendants falsely arrested Plaintiff without probable cause or arguable probable cause that she

committed a crime. The ability to effectuate an arrest as an on-duty officer is a quintessential police power, making it "clear that [Defendants were] acting within the course and scope of [their] discretionary authority when [they] arrested [Plaintiff]." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002); see also Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (finding that it was "clear" the officer acted "within the course and scope of his discretionary authority when he charged and arrested [plaintiff]"). Again, discovery may show otherwise.

Count Six alleges that Defendants falsely imprisoned Plaintiff in violation of her Fourteenth Amendment rights by removing her from the meeting and barring her from returning to it. Plaintiff's complaint states that the BOE requested the presence of uniformed officers at the meeting in order to help keep things calm and provide protection. Dkt. No. 1 ¶ 24. In fact, the video attached to the Complaint shows uniformed officers, alleged to be the Defendants, removing her. See generally id. ¶ 59; see also dkt. no. 23-1. Thus, the Complaint sufficiently alleges that Defendants' actions were taken pursuant to the officers' performance of their duties—to help maintain order and protect the safety of the elected officials—and was within the scope of the officers' discretionary authority. Dkt. No. ¶ 40; see also Brigham City v. Stuart, 547 U.S. 398, 406 (2006) (stating that one role of a peace officer is restoring order); Ellison v. Hobbs, 786 F. App'x

861, 873 (11th Cir. 2019) (citing O.C.G.A. § 45-9-81(7), which defines law enforcement officers' duties to include preservation of public order); Tolston v. City of Atlanta, 723 F. Supp. 3d 1263, 1299 (N.D. Ga. 2024) (Police officer's official duties include preserving public order and maintaining peace.).

**B. Is There Clearly Established Law That Defendants Violated a Constitutional Right?**

Plaintiff has three ways to show that the constitutional rights she alleges Defendants violated were clearly established: "(1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291-92 (11th Cir. 2009) (citations omitted). Defendants argue that their conduct did not violate a clearly established constitutional right under any of these pathways. Dkt. No. 23 at 8.

**i.    Count Four: False Arrest**[2]

Plaintiff alleges that Defendants arrested her without probable cause thereby violating her Fourth Amendment right to be

---

[2] Because the Court's analyses of Counts Four and Six influence its analysis of Count Two, the Court addresses the counts out of numerical order.

free of unreasonable searches and seizures. Dkt. No. 29 at 11. Defendants argue that this claim must be dismissed because Plaintiff has not shown that the officers violated any clearly established constitutional right against illegal seizures. Dkt. No. 38 at 2. This is incorrect.

"An arrest—the quintessential seizure of a person—occurs when the government applies physical force to seize a person or asserts lawful authority to which the subject accedes." Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022) (citation omitted); see also Brendlin v. California, 551 U.S. 249, 254 (2007) ("A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." internal quotations and citations omitted) (emphasis in original)). The Fourth Amendment prohibition of unreasonable searches and seizures includes arrests, but an exception applies for warrantless arrests based on probable cause where the arresting officer believes that a crime "has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted). Probable cause exists where facts, "derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Garcia v. Casey, 75 F.4th 1176, 1186 (11th

14

Cir. 2023) (quoting Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010)). "It requires only 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018) (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)). Where these requirements are met, probable cause is an absolute defense to liability. Id. at 1297.

Yet, even if an arrest or a seizure violated Plaintiff's constitutional rights because there was not probable cause, "this does not automatically strip the officer of qualified immunity protection." Poulakis v. Rogers, 341 F. App'x 523, 526 (11th Cir. 2009). Instead, for qualified immunity to apply in "cases involving arrests or warrantless searches or seizures," Feliciano v. City of Miami Beach, 707 F.3d 1244, 1251 (11th Cir. 2013), "'an officer need not have actual probable cause, but only "arguable" probable cause.'" Brown, 608 F.3d at 734; see also Edger v. McCabe, 84 F.4th 1230, 1235–37 (11th Cir. 2023); Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001); Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009).

"An officer has arguable probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" Garcia, 75 F.4th at 1186 (emphasis in original) (quoting District of Columbia v. Wesby, 583 U.S. 48, 68 (2018)); see also

15

Lee, 284 F.3d at 1195 (holding that "[a]rguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest'" (citations omitted)). Accordingly, "[a]n officer lacks arguable probable cause only if 'the state of the law on the date of the alleged misconduct makes it obvious that the officer's acts violated the plaintiff's rights in the specific set of circumstances at issue.'" Id. (alteration accepted) (quoting Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022)). In Garcia, the Eleventh Circuit explained:

> We believe the doctrine of "arguable probable cause" is a useful shorthand to collapse these three inquiries into a single question in a wrongful arrest case. That is, we must ask whether "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." Wesby, 583 U.S. at 68. So an officer may lack arguable probable cause because an existing precedent establishes that there was no actual probable cause for an arrest on similar facts. Or an officer may lack arguable probable cause because the text of an applicable statute plainly precludes him from making an arrest under that statute. Or the officer may have been so lacking in evidence to support probable cause that the arrest was obviously unconstitutional. But the arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry in any other qualified immunity case. Unless the law "makes it obvious that the [officer's] acts violated the plaintiff's rights," Washington, 25 F.4th at 903, the officer has qualified immunity.

Garcia, 75 F.4th at 1187 (alteration in original); see also Poulakis, 341 F. App'x at 526 ("In other words, [the Eleventh

16

Circuit] ha[s] said that when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had 'arguable probable cause' to make the arrest." (citing Case, 555 F.3d at 1327)).

Defendants' view is that Plaintiff was never arrested so they do not address whether the officers acted with probable cause or arguable probable. See Dkt. Nos. 35 at 7 (stating that since there was no arrest, "it would be quixotic to argue that there was probable cause"); 36 (stating there was not an arrest). However, at this stage of litigation, Defendants' view of the facts is not controlling. Plaintiff contends that she was falsely arrested. Dkt. No. 1 ¶¶ 116–25. To sufficiently plead this claim, Plaintiff must allege that an arrest occurred and that there was a lack of probable cause. Richmond, 47 F.4th at 1172, 1180.

Accepting the facts in the complaint as true, Plaintiff provides an adequate basis to support that "the government applie[d] physical force to seize" her and that the seizure constitutes an arrest.[3] Richmond, 47 F.4th at 1180. Indeed,

---

[3] Defendants direct the Court to its prior decision in Jordan v. City of Darien, No. CV-215-49, 2016 WL 6841077, at *4 (S.D. Ga. Nov. 18, 2016), and argue that it supports their position that Plaintiff was not illegally seized. However, the seizure in Jordan presented very different circumstances than the case at bar. In Jordan, "[n]o physical force was used in [plaintiff's] removal, and [p]laintiff was free to re-enter the Board meeting to obtain his belongings. Id. Here, physical force was used to remove

Plaintiff alleges that Defendants tried to usher her toward the exit and then forcefully hauled Plaintiff out of the meeting by "pick[ing] her up by her shoulders and ankles" and carrying her out of the meeting. Dkt. No. 1 ¶¶ 44–45; see also dkt. no. 23-1 at 1:35–2:54.

Plaintiff also sufficiently alleges that Defendants lacked probable cause or arguable probable cause[4] to arrest her. First, Defendants concede that Plaintiff was not suspected of a crime nor was she ever charged with a crime in connection with her conduct at the meeting. Dkt. Nos. 1 ¶¶ 64, 36. Second, Defendants were present during the meeting and witnessed the events preceding her arrest, so they knew she had not committed a crime or violated the BOE's guidelines. Dkt. No. 1 ¶ 39. Indeed, a large digital timer showed that Plaintiff was less than halfway through the allowed time when Defendants interrupted and ultimately removed her, id. ¶¶ 33, 37, and exercising her First Amendment rights is insufficient, on its own, to create arguable probable cause, id.

_____

Plaintiff; she was physically picked up by the Defendants and carried out of the BOE meeting by her arms and legs. Dkt. Nos. 1 ¶ 45, 23-1 at 1:45–1:56. Also, the video footage here shows that Plaintiff was not able to re-enter to collect her belongings; in fact, when she stated that her things were inside, Defendants re-entered to collect her belongings, and Plaintiff was told to leave. Dkt. No. 23-1 at 2:57–3:01.

[4] To defeat the defense of qualified immunity, Plaintiff must show that there was a lack of arguable probable cause. Brown, 608 F.3d at 734.

¶¶ 38, 48.[5] Third, the video attached to the Complaint shows that Plaintiff was calm and composed while speaking and did not act violently or aggressively toward the elected officials or other individuals present, nor did she voice threats to anyone. Id. ¶¶ 36, 50. Thus, no safety concerns existed when Defendants removed Plaintiff. Therefore, the facts alleged in the complaint as a whole adequately allege that Defendants acted without probable cause or arguable probable cause by seizing Plaintiff and removing her from the meeting.

---

[5] To be clear, the Court is not saying that officers lack probable cause or arguable probable cause for an arrest anytime an individual is exercising her First Amendment rights. In fact, the opposite is true. See Redd v. City of Enterprise, 140 F.3d 1378, 1384 (11th Cir. 1998) ("Likewise, when an officer has arguable probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time that he is arrested."). But accepting all of Plaintiff's allegations as true here, the fact that Plaintiff was engaging in constitutionally protected speech is not sufficient on its own to create probable cause or arguable probable cause for an arrest. Dkt. No. 1 ¶¶ 94-99; see also, e.g., Toole v. City of Atlanta, 798 F. App'x 381, 388 (11th Cir. 2019) ("Reading the facts in [plaintiff's] favor, he was unlawfully arrested without arguable probable cause while engaging in protected First Amendment conduct—protesting and filming police activities—specifically to stop him from doing so."); Moran v. Cameron, 362 F. App'x 88, 89 (11th Cir. 2010) (holding that officers did have arguable probable cause to arrest plaintiff when he was engaged in political speech because he had violated Florida's trespass after warning statute).

Next, Defendants argue that Plaintiff's false arrest claim should be dismissed because she fails to allege that they violated any clearly established right. Published Eleventh Circuit cases show what constitutes a seizure under the Fourth Amendment. See West v. Davis, 767 F.3d 1063, 1068 (11th Cir. 2014) (holding that plaintiff was seized when sheriff "intentionally restrained her liberty of movement by physical force" so that she was "surely not free to walk away or end the encounter and proceed about her business"). Moreover, it is clearly established that a seizure without probable cause, or arguable probable cause, is a violation of the Fourth Amendment. See, e.g., Skop v. City of Atlanta, 485 F.3d 1130, 1143 (11th Cir. 2007) ("[O]ur binding precedent clearly established, at the time of [plaintiff's] arrest, that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."). Further factual development may cast a new light on the situation at hand, but at least for now, the Court must accept the content of the pleadings and the attached video footage as true. The video shows that when Defendants lifted Plaintiff by her shoulders and ankles, she was not able to walk away. Dkt. No. 23-1 at 1:45–1:56.

Defendants encourage the Court to rely on O'Boyle v. Thrasher, 638 F. App'x 873 (11th Cir. 2016), because "there is no material distinction between O'Boyle and the matter sub judice." Dkt. No. 38 at 3. O'Boyle is a per curiam decision, but it is an unpublished

20

case. It does not carry any weight in determining whether the law is clearly established. Id._; see also_ J W by and through Tammy Williams v. Birmingham Bd. of Ed., 904 F.3d 1248, 1263 (11th Cir. 2018) (stating that the court looks at _published_ case law to determine whether a right is clearly established (emphasis added)). Furthermore, the facts in O'Boyle are different than those at hand. In O'Boyle, the police chief grabbed the plaintiff's arm, shoved him, and "escorted him" away from the area. O'Boyle, 638 F. App'x at 878. Even though the police chief used physical contact to move the plaintiff, the plaintiff still maintained control over his legs and was "free to walk away or end the encounter and proceed about his business," and he remained on the scene. Id. (alterations accepted) (quoting West, 767 F.3d at 1070). Here, Plaintiff was held in the air by her shoulders and legs. She did not remain. Dkt. No. 23-1 at 1:45-1:56.

Plaintiff has alleged that Defendants arrested her without probable cause or arguable probable cause, and Plaintiff's Fourth Amendment right to be free from unreasonable seizures was clearly established at the time of Defendants' conduct. Therefore, Defendants are not entitled to qualified immunity on Plaintiff's false arrest (Count Four) claim at this time. Defendants' motion to dismiss this claim is **DENIED**.

ii.  **Count Six: False Imprisonment**

"A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law" and the protection of the Fourth Amendment against unreasonable seizures. Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996) (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)). "A detention on the basis of a false arrest presents a viable section 1983 action for false imprisonment." Id. (citations omitted); Wallace v. Kato, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). Thus, if an officer lacks probable cause for an arrest, then the "arrestee" has a claim for false imprisonment under § 1983 for that detention.

To plead a false imprisonment claim under § 1983, Plaintiff must establish "the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment." Ortega, 85 F.3d at 1525 (citing Cannon v. Macon Cnty., 1 F.3d 1558, 1563 (11th Cir. 1993)). The false imprisonment elements are "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." Id. at 1526 n.2. Further, to show a violation of due process under the Fourteenth Amendment, "[a] plaintiff must also prove that the defendant acted with deliberate indifference in violating the plaintiff's right to be

22

free from continued detention after the defendant knew or should have known that the detainee was entitled to release." May v. City of Nahunta, 846 F.3d 1320, 1329 (11th Cir. 2017) (citations omitted). Deliberate indifference means "that the defendants subjectively knew of a risk of serious harm, and disregarded that risk by actions that constitute more than mere negligence." Jones v. Beasley, 645 F. App'x 840, 842–43 (11th Cir. 2016).

At this stage, Plaintiff has sufficiently pleaded a claim of false imprisonment, and she has sufficiently pleaded that her imprisonment violated her Fourteenth Amendment rights. Plaintiff alleges that Defendants exhibited an intent to confine Plaintiff and took actions resulting in her confinement. This is evidenced by the fact that Defendants picked up Plaintiff by her shoulders and ankles and carried her outside the meeting room. Dkt. No. 1 ¶¶ 45, 49, 54, 137. Further, after setting Plaintiff down outside the building, Defendants "pushed her away from the door," confining Plaintiff to outside the meeting room and preventing her from re-entering. Id. ¶ 58. Lastly, the Complaint adequately alleges that Plaintiff was conscious of her confinement and the associated harm. The video shows her struggle as she is carried outside. It is further alleged that Plaintiff was not allowed to return to the meeting despite her desire to do so. Finally, Plaintiff adequately alleges that she suffered physical harm, mental and emotional

suffering, and harm to her reputation as a result of the confinement. Id. ¶¶ 57-58, 140.

Plaintiff also adequately asserts that her imprisonment violated the Fourteenth Amendment. The Complaint contains sufficient facts to show that Defendants lacked probable cause or arguable probable cause to seize Plaintiff. With, as Plaintiff alleges, no basis to arrest Plaintiff, a reasonable officer could not believe that detaining her was appropriate. See, e.g., Ortega, 85 F.3d at 1526; Reeves v. City of Jackson, 608 F.2d 644, 650 (5th Cir. 1979)[6] (presenting a § 1983 false imprisonment claim when officers who lacked probable cause arrested and detained plaintiff). The same factual contentions that support Plaintiff's false arrest claim also support Plaintiff's false imprisonment claim. These facts are discussed thoroughly supra; nevertheless, a brief recitation is warranted. Defendants concede that Plaintiff was not suspected of a crime nor was she ever charged with a crime that could give rise to probable cause or arguable probable cause. Dkt. Nos. 1 ¶ 64; 36. Further, although Defendants stated at the hearing that Plaintiff was seized by the officers and removed for "disrupting" the meeting, Plaintiff has shown via the video that Defendants observed the meeting and events prior to Plaintiff's

---

[6] Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981).

arrest. Plaintiff argues that Defendants, thus, knew she had not committed a crime or violated the BOE's speaker guidelines. Plaintiff's video shows evidence that she was calm and composed and that she did not behave violently or verbally threaten anyone. Id. ¶¶ 33, 36–37, 39, 50. Accepting these facts as true, Plaintiff sufficiently pleads a section 1983 claim for false imprisonment (Count Six), and Defendant's motion to dismiss this claim is **DENIED**.[7]

---

[7] Defendants cite Huggins v. School District of Manatee County, No. 8:22-cv-1183, 2022 WL 4095065, at *7–8 (M.D. Fla. Sept. 7, 2022), to suggest that Plaintiff was not illegally seized or confined when she was removed from the meeting and not allowed to return. Dkt. No. 35 at 6–7. In Huggins, the plaintiff attended a school board meeting and alleged that the board was trying to deter Black citizens from speaking. Id. at *1. During the meeting, plaintiff stood up against the back wall because his back was hurting; he was told by the security officer that he either needed to sit down or leave. Id. at *2. Plaintiff would not sit down, so he was instructed to leave the meeting, which he did. Id. Once in the lobby, the officer put his hand on plaintiff's back and pushed him outside the building, and plaintiff was not allowed to return to make his public comments. Id. The district court determined that the officer's conduct did not violate the Fourth or Fourteenth amendments. Id. at *7. Unlike the plaintiff in Huggins who voluntarily left the meeting area and was then pushed outside the building by the officer, here, Plaintiff's video shows that she did not *choose* to leave the meeting. In this case, the video shows that the officers used physical force to remove her from the meeting. Furthermore, unlike in Huggins where the plaintiff was free to leave even though an officer "placed his hand on [plaintiff's] back," here, Plaintiff was not free to leave during her encounter with the officers. Id. at *2. Indeed, if the facts alleged are true, she was unable to leave because Defendants were holding on to all four of her limbs. Dkt. No. 23-1 at 1:45–1:56.

### iii. Count Two: First Amendment Retaliation

To assert a First Amendment retaliation claim, Plaintiff must plausibly allege "[first that her] speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).[8] "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. (quotation and citations omitted). For purposes of false imprisonment and false arrest claims, both of which Plaintiff has alleged here, "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." Nieves v. Bartlett, 587 U.S. 391, 405 (2019); see also id. at n.2 ("For our purposes, we need not distinguish between the torts of false imprisonment and false arrest, which are 'virtually synonymous.'" (first citing 35 C.J.S., False Imprisonment § 2, p. 522 (2009), then citing Wallace, 549 U.S. at 389–90)).

The U.S. Supreme Court and Eleventh Circuit have repeatedly stated "the law is settled that as a general matter the First

---

[8] Defendants have withdrawn their argument that Count Two should be dismissed for failure to adequately allege facts sufficient to establish the three elements of a First Amendment retaliation claim. Dkt. No. 38 at 4.

Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006); see also Nieves, 587 U.S. at 398 ("As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." (alterations adopted) (quotation and citation omitted)); Potter v. Williford, 712 F. App'x 953, 955 (11th Cir. 2017) ("[I]t is clearly established that public officials may not retaliate against private citizens for exercising their First Amendment rights."); Bennett, 423 F.3d at 1255 ("This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights."); Carr v. Cadau, 658 F. App'x 485, 490 (11th Cir. 2016) ("This court's precedent provides that 'the law was clearly established at the time of [defendants'] alleged actions that retaliation against private citizens for exercising their First Amendment rights was actionable.'" (citations omitted)).

The remaining thrust of Defendants' attack on Count Two is their claim that the First Amendment retaliation claim must fail because its survival depends on a showing of a seizure. They urge the Court to conclude, at this stage, that no seizure occurred.

In order for Defendants to prevail on this argument, the Court would need to conclude that (1) Plaintiff did not sufficiently

allege that she was seized, and (2) Plaintiff failed to adequately plead that Defendants acted without probable cause or arguable probable cause. As discussed at length in Sections B.i and B.ii, when accepting the allegations in the Complaint as true, Plaintiff adequately pleads that she was unlawfully seized and that Defendants acted without probable cause or arguable probable cause. As a result, at this stage of the proceedings, Defendants' motion to dismiss Plaintiff's retaliation claim (Count Two) is **DENIED.**

## II.  State Law Claims: Counts Seven,[9] Nine, Eleven, and Thirteen

Defendants argue that the state law claims against them—battery, false imprisonment, intentional infliction of emotional distress, and negligence—are barred by official immunity. Official immunity, which originated from Georgia case law, is now codified in the Georgia Constitution. See Gilbert v. Richardson, 452 S.E.2d 476 (Ga. 1994); Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d). This doctrine provides that public employees can be sued "for negligent performance or nonperformance of their 'ministerial functions' or 'if they act with actual malice or with actual intent to cause injury in the performance of their official functions.'" Barnett v. Caldwell, 809 S.E.2d 813, 847 (Ga. 2018) (quoting Ga.

---

[9] Plaintiff's Complaint contains two claims labeled as Count Seven. See Dkt. No. 1 at 21–22. This Order only addresses Plaintiff's claim for battery (Count Seven) asserted against Defendants Nizwantowski and Santoro. Id. ¶¶ 154–60.

Const. of 1983, Art. I, Sec. II, Par. IX(d)). Otherwise, public employees "'shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.'" Id. Put more simply, public employees "may be held personally liable for negligence relating to their official duties only when performing 'ministerial' acts; 'discretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." Id. at 848 (citations omitted).

Ministerial duties are "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Wyno v. Lowndes Cnty., 824 S.E.2d 297, 301 (Ga. 2019). Conversely, discretionary acts require "personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. Whether an act is ministerial or discretionary depends on the specific facts of the case. Stanley v. Patterson, 878 S.E.2d 529, 534 (Ga. 2022).

Defendants argue that removing Plaintiff from the meeting was "a quintessential discretionary act." Dkt. No. 23 at 13 (citing Reed v. Dekalb Cnty., 589 S.E.2d 584, 587 (Ga. Ct. App. 2003), where the court held that "the decision to effectuate a warrantless

arrest generally is a discretionary act").[10] Plaintiff does not contest that Defendants engaged in discretionary acts but argues that Defendants acted with actual malice. Id.

"'Actual malice,' as that term is used in the constitutional provision, denotes 'express malice,' i.e., 'a deliberate intention to do wrong,' and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007) (citing Merrow v. Hawkins, 467 S.E.2d 336 (Ga. 1996)). "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by [Plaintiff]." Hoyt v. Cooks, 672 F.3d 972, 981 (11th Cir. 2012) (quoting Murphy, 647 S.E.2d at 60 (internal quotation marks omitted)). The allegations in the complaint can establish a reasonable inference that Defendants acted with actual malice. Bailey v. Wheeler, 843 F.3d 473, 486 (11th Cir. 2016) (holding that plaintiff's allegations could "establish the reasonable inference that [defendant] acted with actual malice in issuing the BOLO" for plaintiff); see also Abercrombie v. Beam, 728 F. App'x 918, 928 (11th Cir. 2018) ("Under Georgia law, the record may

---

[10] Defendants also argue that the video footage contradicts Plaintiff's assertion that Defendants acted with actual malice. Dkt. Nos. 23 at 15, 35 at 17–18. However, Defendants provide no explanation as to how this video is contradictory to Plaintiff's claim.

support an inference of actual malice where evidence indicates that the police officer arrested the plaintiff despite having knowledge that the plaintiff did not commit the crime for which he was arrested."); Jackson v. Patterson, 757 S.E.2d 164, 166 (Ga. Ct. App. 2014) (finding that whether deputies acted with actual malice was a question of fact when a jury could reasonably infer the defendant-deputies arrested plaintiff without authority and "thereby deliberately intend[ed] to do a wrongful act").

Plaintiff pleaded multiple facts, which, if proven, would support an inference of actual malice. She alleges that Defendants physically carried Plaintiff out of the meeting, causing her pain and ignoring her requests to put her down, despite knowing that Plaintiff had not violated the BOE's speaker guidelines, exceeded her speaking time, committed any crime or acted violently, aggressively, or in a threatening manner. Dkt. No. 1 ¶¶ 33, 36–37, 39, 46, 49–55, 57, 64.

Defendants urge the Court not to infer actual malice. They rely on several cases for support. Dkt. No. 38 at 5. However, these cases are inapposite because there, unlike here, the plaintiffs failed to allege *any* factual bases to show that the defendants intended to do wrong or cause harm or to infer actual malice. See, e.g., Cooke v. Brashears, No. 21-cv-04680, 2022 WL 18426150, at *8 (N.D. Ga. Dec. 29, 2022), aff'd, No. 23-10191, 2023 WL 7490063 (11th Cir. Nov. 13, 2023) ("Plaintiff *does not make any allegations*

regarding Defendants' potential intent to injure or actual malice
in support of her claim for false arrest and false imprisonment
. . . . Moreover, none of Plaintiff's allegations in support of
this claim provide a basis for the Court to infer actual malice."
(emphasis added) (internal citation omitted)); Hill v. Clayton
Cnty., No. 21-cv-5300, 2022 WL 17558831, at * 12 (N.D. Ga. Dec. 9,
2022) ("The Court agrees with the County Defendants that
[plaintiff] *fails to allege facts* showing that [defendants]
intended to cause the harm that [plaintiff] suffered."); Watts v.
McLemore, No. 18-cv-079, 2019 WL 13175549, at *9 (M.D. Ga. Sept.
26, 2019) (stating that, when there is probable cause, actual
malice "generally will not be inferred" and holding that plaintiff
"has not alleged *any fact* demonstrating that [defendant] acted
with actual malice or an intent to injure her" (emphasis added)).
As the facts in this case are further developed, Defendants may
reassert that official immunity bars Plaintiff's state law claims,
but for now it does not. Hence, Defendants' motion to dismiss
Plaintiff's state law claims (Counts Seven, Nine, Eleven, and
Thirteen) is **DENIED.**

**III. Count Eleven: Intentional Infliction of Emotional Distress**

Defendants argue that Plaintiff did not adequately plead a
claim for intentional infliction of emotional distress because
Defendants' conduct was not extreme and outrageous, and Plaintiff
did not suffer severe emotional distress. Dkt. No. 23 at 19–21.

32

Four elements must be present to maintain a claim for intentional infliction of emotional distress (IIED): "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe." Cottrell v. Smith, 788 S.E.2d 772, 780 (Ga. 2016). Conduct is considered "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citation omitted). Importantly, it is not enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Id.

Defendants argue that Plaintiff does not allege facts showing the conduct was extreme and outrageous. Dkt. No. 23 at 19. To assess this issue, the Court asks whether "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'Outrageous!'" Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 837 (Ga. 1991) (citing Comment d § 46(1) of the Restatement (Second) of Torts). In the complaint, Plaintiff

33

alleges that other attendees at the meeting were trying to "plead[] with Defendants to cease from their attack." Dkt. No. 1 ¶ 47. Rare, indeed, is a case like the present one where a video of the event actually captures members of the community making <u>Yarbray</u> type exclamations. In the video attached to the Complaint, a woman can be heard shouting "oh my God!" in response to Plaintiff being carried out by Defendants. Dkt. Nos. 1 ¶ 59, 23-1 at 2:09-2:11. Other individuals can be heard yelling "get your hands off of her," dkt. no. 23-1 at 1:40-1:43, and multiple attendees repeatedly proclaimed "unbelievable" or "this is unbelievable," <u>id.</u> at 1:44-1:45, 1:54-1:55, 2:15-2:16, 2:18-2:19. These real time reactions from bystanders are akin to an individual shouting "outrageous!" Moreover, the fact that attendees were trying to intervene and plead with Defendants to stop supports an inference that the conduct was extreme and outrageous. Dkt. No. 1 ¶ 47. Thus, when accepting the allegations in the Complaint and the attached video footage as true, a jury could conclude that the actions in this case amount to "extreme and outrageous" conduct.

Defendants also argue that Plaintiff does not allege facts showing she suffered emotional distress that was so severe that no reasonable person could be expected to endure it. Dkt. No. 23 at 20-21. "Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea."

<u>Jones v. Fayette Family Dental Care, Inc</u>., 718 S.E.2d 88, 91 (Ga. Ct. App. 2011). But "[t]he law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." <u>Id.</u>

Defendants point out that Plaintiff does not allege she suffered any specific psychological condition or sought any medical or psychological treatment due to Defendants' conduct. Dkt. No. 23 at 20; <u>see also, e.g.</u>, <u>Jones</u>, 718 S.E.2d at 91 (holding that a plaintiff who suffered no physical ailments did not exhibit severe enough distress for IIED). But, failing to plead facts that might make a claim stronger does not mean the claim is inadequate. Moreover, "evidence of medical treatment is not required to establish the existence of severe emotional distress." <u>Jefferson v. Houston Hosps., Inc.</u>, 784 S.E.2d 837, 844 (Ga. Ct. App. 2016). The Complaint states that Plaintiff feared violent injury from Defendants' conduct, dkt. no. 1 ¶ 56, and that she is "fearful of engaging in any further political speech" at the venue, <u>id.</u> ¶ 103. Furthermore, Plaintiff alleges that she was struggling to keep her skirt down to prevent herself from being further exposed. <u>Id.</u> ¶ 45. Indeed, the video shows Plaintiff grabbing her skirt and trying to keep herself covered. Dkt. No. 23-1 at 2:43–2:50. A jury could find that carrying a woman with her legs in the air, against her will, while she is wearing a skirt and during a public and well-attended meeting of a municipal board could cause her extreme

35

embarrassment and humiliation. Additionally, a jury could conclude from the uproar among other attendees that the conduct was so distressing that a reasonable person would not be expected to endure it. In fact, bystanders were protesting on Plaintiff's behalf, and some even tried to physically intervene to stop Defendants. Dkt. No. 1 ¶ 47; see also dkt. no. 23-1 (depicted throughout the video). At bottom, given the early stage of these proceedings, Plaintiff's factual allegations in the Complaint coupled with the facts depicted in the video are sufficient to show that Plaintiff suffered emotional distress severe enough to continue with her cause of action. Therefore, Defendants' motion to dismiss Plaintiff's IIED claim (Count Eleven) is **DENIED.**

### CONCLUSION

For these reasons, Defendants Nizwantowski and Santoro's motion to dismiss, dkt. no. 23, is **DENIED.**

**SO ORDERED** this 4th day of February, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

36